## UNITES STATES BANKRUPTCY COURT
## DISTRICT OF NEW MEXICO

**Re:**
**Debbie Ann Molina**                    **No. 13-09-10669 SA**

### MEMORANDUM OPINION IN SUPPORT OF
### ORDER CONFIRMING DEBTOR'S CHAPTER 13 PLAN

This matter is before the Court on confirmation of the chapter 13 plan of Debtor Debbie Ann Molina.  Doc 3.  The Chapter 13 Trustee has objected to confirmation on the grounds that Debtor essentially seeks a chapter 7 discharge, for which she is not eligible, in the guise of a chapter 13 case.  Doc 15.[1]  For the reasons set forth below, the Court will enter an order confirming the plan.

**Background**

Debtor filed her chapter 13 petition (doc 1) on February 23, 2009.  As disclosed on her petition, Debtor had filed a chapter 7 petition (case no. 7-03-14506 SA, District of New Mexico) on June 4, 2003, and obtained a discharge in that case.  Not currently eligible to obtain another discharge by filing another chapter 7 petition[2], Debtor seeks a discharge through this chapter 13 case.

---

[1] The Trustee raised additional objections which are addressed in this opinion, but the good faith objection was the issue which the parties mostly at the confirmation hearing.

[2] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109-8, 119 Stat. 23, 2005, amended §727(a)(8) to preclude a discharge in a chapter 7 case filed within eight years of the filing of a petition in a previous chapter 7 case which resulted in a discharge for the debtor.

Case 09-10669-t13   Doc 23   Filed 06/29/09   Entered 06/29/09 13:30:41 Page 1 of 17

Debtor filed her plan with the petition. The plan provides for payments to the Trustee of $50 per month for 36 months. It proposes no treatment of secured claims, and provides for no payments to unsecured creditors. The plan estimates that attorney fees going forward (from the date of the filing of the plan) will be $3,000 at $195 per hour. Debtor's attorney ("Counsel") was paid $1,026, exclusive of the filing fee (doc 8), prior to the filing of the petition, and has since been paid an additional $432.44 (doc 17). Thus all the plan payments – a net of $1,620 after the Trustee's commissions -- would go to paying administrative attorney fees.

Debtor's schedules show that Debtor's assets, debts, income and expenses are extremely modest. Schedule A shows a house and lot valued at $35,000; the real estate secures a first mortgage note of $45,000 and a second mortgage note of $17,000.[3] Schedule B lists about $20,000 in assets, of which $13,000 is Debtor's state retirement fund and $3,800 is four vehicles, only one of which Debtor actually owns and uses.[4] Schedule C exempts all the

---

Section 1328(f)(1) permits a discharge in a chapter 13 case filed four years or more after a chapter 7 case that resulted in a discharge.

[3] The second mortgage has now been voided. Adversary Proceeding 09-1027.

[4] The vehicles include a 1986 Pontiac Grand Prix, which given the fate of its manufacturer may conceivably increase in value as an antique, and a 1987 Ford Escort, which regardless of the fate of its manufacturer is unlikely to ever rise in value.

Page 2 of 17

Case 09-10669-t13    Doc 23    Filed 06/29/09    Entered 06/29/09 13:30:41 Page 2 of 17

assets.  Schedule E shows no debt to the New Mexico Taxation and Revenue Department or any other priority creditor.  Schedule F shows about $14,000 of unsecured debt.

Schedule I discloses that Debtor is a divorced grandmother caring for a six year old grandson.  She works as a care giver for the New Mexico Children Youth and Families Department.  Her monthly gross income is $1,831 and her net income is $1,393.[5] Schedule J shows expenses of $1,343.  The monthly expenses include – and are typified by – $388 for the mortgage, $170 for food, $64 for the rent-to-own washer and dryer, but $231 for electricity, heating fuel, water and sewer.  The means test discloses that Debtor, with annual income of $21,959 ($1,830 x 12), is decidedly below the New Mexico median family income of $34,585 for a family of two.  One reason the family income is so low is, aside from the fact that this is New Mexico, where low incomes predominate, Debtor threw out of the house her then husband (doc 7 – Statement of No Non-filing Spouse) about 3 1/2 years ago because of his drug abuse.

---

[5] One of the deductions is $98 for "insurance", presumably health insurance.  Debtor receives free child care services through the State.

Case 09-10669-t13    Doc 23    Filed 06/29/09    Entered 06/29/09 13:30:41 Page 3 of 17

Debtor at least on paper is in the black by $50 each month.[6] Her testimony at trial was that her wages were being garnished at the rate of $171 biweekly, so that it is this filing that puts her budget in the black. And but for this filing, she would be losing her house.

The filing was triggered by Citifinancial Auto garnishing portions of Debtor's wages.[7] At trial, Debtor testified and put into evidence her pay stubs for July 3, 2008 through December 5, 2008, although the August 1, 15 and 23, 2008 payment advices were missing.

Debtor argues that she cannot continue to support herself and her grandson without getting rid of the garnishment, and that of course she cannot afford to pay off the Citifinancial debt. She argues that she has filed this case and seeks confirmation of her plan in complete good faith, among the other requirements for

---

[6] Thus this case does not raise the issue of a bankruptcy filing which still leaves the debtor in a negative cash flow position each month. In the course of examining schedules I and J in most of the numerous chapter 7 cases in which a debtor seeks to reaffirm a debt, the Court has found that in 80-90% of those cases, debtors end up postpetition with monthly expenses that exceed their monthly net income, usually by hundreds of dollars.

[7] Part 4(b) of the Statement of Financial Affairs states that Debtor paid Citifinancial $1,041 in the 90 days immediately preceding the filing. Debtor exempted this preference action and it has now been prosecuted to completion. The recovery was the source of the post petition payment of attorney fees. There was no evidence at trial as to whether Citifinancial was able to recoup its loss in turn through funds received from the Troubled Asset Relief Program ("TARP").

Page 4 of 17

confirmation. The Trustee did not challenge Debtor's bona fides or sincerity. Rather, she argued a more nuanced position; namely, that "good faith" in this context is really a legal term. Thus, the Trustee argued that the plan was not filed in good faith because it provided no meaningful payment to creditors, Debtor had had no real change in her income since the closing of her chapter 7 case, the restrictions on discharges from chapter 7 filings would be meaningless if one could repeatedly file chapter 13 cases, and this was no more than a disguised chapter 7 filing. She also argued that chapter 13 was not intended to be in effect a welfare statue; rather it is the function of the State to provide such aid to debtors and their dependents. Finally she argued that the plan was filed in bad faith in that on its face the plan does not provide sufficient funds to pay all the anticipated attorney fees.[8]

No other creditor objected or appeared at the confirmation hearing. The Court took the matter under advisement.

**ANALYSIS**

Of the requirements for confirming a plan, 11 U.S.C. §1325(a)(3) is probably the least quantifiable:

---

[8] As noted, Counsel waived any fees that were incurred but not paid by the end of the plan.

Case 09-10669-t13   Doc 23   Filed 06/29/09   Entered 06/29/09 13:30:41 Page 5 of 17

[T]he plan has been proposed in good faith and not by any means forbidden by law.[9]

Good faith in chapter 13 cases was addressed long ago by the Tenth Circuit in <u>Flygare v. Boulden (In re Flygare)</u>, 709 F.2d 1344 (10th Cir. 1983) (quoting <u>In re Estus</u>, 695 F.2d 311, 315 (8th Cir. 1982)).  The bankruptcy court in <u>Flygare</u> had denied confirmation of the plan on two grounds, one of which was that "a payment of 1 percent or 2 percent to creditors on the facts of the case is not a meaningful payment as required under the good faith provisions of Chapter 13."[10]  709 F.2d at 1346.  (Internal punctuation omitted.)  The Tenth Circuit reversed, taking the "middle road" approach to confirming chapter 13 plans:

> These courts do not automatically reject a plan which proposes nominal payments to unsecured creditors, but neither do they automatically confirm a plan as meeting the subsection (a)(3) good faith requirement if the subsection (a)(4) 'best interests' test is met. Instead these courts reason that a finding of good faith requires an inquiry, on a case-by-case basis, into whether the plan abuses the provisions, purpose or spirit of Chapter 13.

<u>Id.</u> at 1347, quoting <u>United States v. Estus (In re Estus)</u>, 695 F.2d 311, 315 (8th Cir. 1982).  (Internal punctuation omitted.)

---

[9] Section 1325(a)(7) runs a close second in the hard-to-quantify category: "[T]he action of the debtor in filing the petition was in good faith."

[10] The other ground was that the amended plan which extended the plan base from 36 months to 50 months was not enough of a change from the first plan.  The Tenth Circuit brusquely rejected that reason for denying confirmation.  709 F.2d at 1345 n. 1.

The court then adopted the (non-exclusive) list of factors compiled by the Estus court for assessing the confirmability of chapter 13 plans:

(1) the amount of the proposed payments and the amount of the debtor's surplus;
(2) the debtor's employment history, ability to earn and likelihood of future increases in income;
(3) the probable or expected duration of the plan;
(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;
(5) the extent of preferential treatment between classes of creditors;
(6) the extent to which secured claims are modified;
(7) the type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;
(8) the existence of special circumstances such as inordinate medical expenses;
(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;
(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief; and
(11) the burden which the plan's administration would place upon the trustee.

Id. at 1347-48.

Applying the Flygare factors to the facts of this case results in the following assessment:

1. Debtor's monthly surplus is $50, exactly what she is committing to the plan for 36 months.
2. There was relatively little direct testimony about debtor's employment history, ability to earn and likelihood of a future increase in income, but Debtor stated on Schedules I and J that she did not expect any increases or decreases in income or expenses. Debtor's occupation as a care taker does not suggest the likelihood of a significant increase in income, nor does Debtor's age.
3. The expected duration of the plan is the 36 months proposed, the minimum required by the statute for a less than 100% plan.

Page 7 of  17

4.  There was no suggestion in the testimony that Debtor was in any material way inaccurate in her filings, and certainly no suggestion whatever of any intent by Debtor not to be completely accurate or honest.
5.  The plan has no preferential treatment between classes, other than that the administrative claims are being paid ahead of other claims, as required by statute.
6.  The plan does not modify – or even mention – the first mortgage.  It is clear, however, that Debtor is intent on paying it according to its terms.  The second mortgage has already been voided for being completely unsecured.  The voiding of the second mortgage is definitely a benefit to Debtor.
7.  There is nothing remarkable about the type of debt being discharged, other than that the collection action by the one creditor would outside of bankruptcy cause Debtor to lose the home for herself and her grandson.  However, while no specific debt is non-dischargeable as such, Debtor is not eligible for a discharge.
8.  There appear to be no special circumstances driving this filing (other than the collection action); the cost of caring for the grandson appears to be a relatively small incremental one over what would be Debtor's expenses for herself.[11]
9.  Debtor has sought relief under the Code before.
10. Debtor is completely sincere in seeking chapter 13 relief since stopping the garnishment and preserving her home and income for herself and her grandson are critical for her.
11. The Trustee has systematically developed systems for the efficient processing of collections from debtors and payments to creditors.  Assuming Debtor pays timely, the incremental effort required of the Trustee will be minimal.

All the factors other than 6, 7 and 9 demonstrate good faith by Debtor and support confirmation.  Factors 7 and 9, which give rise to this dispute, obviously weigh heavily against confirmation.  And factor 6 is a decided benefit to Debtor and therefore also weighs somewhat against confirmation.  Nevertheless, on balance, applying the Flygare factors leads the

---

[11] Indeed, the food budget of $170 seems extremely low just for a single older woman, much less for her and the six year old.

Case 09-10669-t13    Doc 23    Filed 06/29/09    Entered 06/29/09 13:30:41 Page 8 of 17

Court to conclude Debtor has proposed her plan in good faith as contemplated by the statute.

However, in this case the inquiry is not finished. Relying on In re Paley, 390 B.R. 53 (Bankr. N.D.N.Y. 2008) and the recently issued decision of In re Sanchez, No. 13-09-10955 Bankr. D.N.M. slip opinion filed May 19, 2009 – doc 25), the Trustee argues that a plan which pays nothing except a portion of the administrative attorney fees, and does so because the debtor is ineligible for a chapter 7 discharge, by definition is not proposed in good faith. In Paley (which combined two cases) the debtors, ineligible for chapter 7 discharges, proposed plans respectively of nine months and twelve months, with payments sufficient only to pay trustee commissions and attorney fees. 390 B.R. at 54. Both debtors had very modest assets and income, and relatively little debt. Id. at 57. The New York court found the plans were not filed in good faith:

> While this court harbors no doubts about the real world
> bona fides of the individuals involved in these cases,
> their respective plans do not enjoy that status.
> Reduced to their cores, we have two cases with debtors
> ineligible for Chapter 7 discharges seeking another
> round of debt forgiveness. Chapter 13 is titled
> "Adjustment of Debts of an Individual with Regular
> Income." The Debtors are not adjusting anything, much
> less debt; they are canceling and eliminating the
> claims of creditors while simply paying their
> attorneys. Under the theories advanced by the Debtors,
> carried to an absurd extreme, if they had paid their
> respective attorneys in full up front, they could have
> proposed a plan of $0 for zero months and demanded a
> Chapter 13 discharge.

Page 9 of 17

Id. at 59. The court went on to comment that permitting a discharge in this guise would effectively blur the distinction between chapter 7 and chapter 13 cases into "a meaningless haze." Id. at 59-60.

The facts in Sanchez closely parallel those in this case, including older debtors that earn far less than the median income with the need to stop a prepetition garnishment.[12] Id. at 1. The plan provisions in Sanchez were virtually identical to those in this case, including Counsel's waiver of any attorney fees not paid by the plan.[13] Id. at 3. In those circumstances the Sanchez court, citing to Paley among other cases, found that the debtors' plan was "not consistent with the rehabilitation and repayment objectives intended by Chapter 13." Id. at 6. It denied confirmation of the plan.

The Court respectfully reaches a different conclusion in this case from that of the Sanchez and Paley and other courts.[14]

To start, factor 10 of the Flygare standards suggests that the Trustee is not completely correct in urging that good faith

---

[12] One difference is that the Sanchez "Debtors' bankruptcy history indicates a pattern whereby the Debtors incur debts they are unable to repay and then seek bankruptcy protection every few years in order to alleviate their debt burden." Id. at 2. The Sanchez debtors filed three bankruptcy cases in 11 years. Id.

[13] The same attorney filed this case and the Sanchez case.

[14] In so doing, the Court acknowledges that Sanchez was authored by one of the most intellectually formidable bankruptcy jurists of the past quarter century.

Page 10 of 17

is a legal test rather than a factual one.  However exactly good faith is defined, it would seem to be measured at least in part by the attitude and actions of the debtor.  And <u>Flygare</u> factors 4 (accuracy of the plan's statements and attempts to deceive the court), 5 (the extent of preferential treatment between classes of creditors), and 9 (the frequency with which the debtor has sought relief under the Code) require in part an examination of a debtor's motives.  In this case, the Trustee, ever candid with the Court, has acknowledged the bona fides and sincerity of Debtor in filing this case.

The sincerity of debtors was not sufficient for the <u>Sanchez</u> court, relying on <u>Paley</u>, to find good faith in their plan.  On the other hand, several additional reasons support this Court's conclusion that this Debtor's plan should be confirmed.  In sharp contrast with <u>Paley</u>, Debtor has committed to a full 36 months of payments.  Given the generosity of Counsel in his willingness to be paid less than what he estimates it will take to complete Debtor's representation, that plan period could arguably have been less, perhaps significantly so.  Thus it weighs in Debtor's favor that she has committed to the full 36 months.

More significantly, Congress has specifically addressed the issue of a chapter 7 case followed by a chapter 13.  In BAPCPA, Congress extended the time between cases which result in a discharge by adding subsection (f)(1) to § 1328 to provide that

Case 09-10669-t13    Doc 23    Filed 06/29/09    Entered 06/29/09 13:30:41 Page 11 of 17

"the court shall not grant a discharge ... if the debtor has received a discharge ... in a case filed under chapter 7, 11 or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter...." Congress extended the time between discharges; it added no other requirements for confirmation of a plan and ultimately for discharge.

In this case Debtor's filing is obviously outside the four-year "blackout" period, and Debtor is literally doing all that the statute requires of her. In effect the <u>Paley</u> and <u>Sanchez</u> courts have added a requirement that Congress did not put into the statute: that a minimal-payment chapter 13 plan that might well pass muster otherwise will not be confirmed if the debtor is not eligible for chapter 7 relief. A court ought to hesitate to add requirements for discharge that Congress did not see fit to include in the statute. <u>E.g.</u>, <u>Flygare</u>, 709 F.2d at 1345-46 (one ground upon which the bankruptcy court denied confirmation was that a payment of one or two percent to unsecured creditors was not meaningful) and 1348 ("[a] per se minimum payment requirement to unsecured creditors as an element of good faith would infringe on the desired flexibility of chapter 13 and is unwarranted." Internal punctuation and citation omitted.). <u>See also</u> <u>In re Burrell</u>, 25 B.R. 717, 720-22 (N.D. Cal. 1982), <u>reversing</u> <u>In re Burrell</u>, 2 B.R. 650 (Bankr. N.D. Cal 1980) which had held that a 70% distribution to unsecured creditors was the minimum needed to

Case 09-10669-t13   Doc 23   Filed 06/29/09   Entered 06/29/09 13:30:41 Page 12 of 17

fulfil the good faith requirement.[15]  (Decided under former law.) "Although courts have the power to construe legislation, they are not authorized to alter the plain meaning of a statute." Burrell, 25 B.R. at 721.

This is not to say that a court may not deny confirmation in circumstances not explicitly addressed by Congress.  But if the court is in effect requiring of a debtor something that does not appear in the statute, it ought to articulate, as the basis for the added requirement, a specific conflict with a statutory provision or policy clearly inherent within the Code that the added requirement will resolve.  For example, a court might well deny for bad faith confirmation of a plan of a debtor who refuses to comply with legitimate discovery requests, on the grounds that the debtor's conduct directly contravenes the overarching principles of transparency and disclosure that inhere in the bankruptcy process.

Requiring the court to articulate a basis for adding requirements to what Congress has written in the statute has the advantage of placing bounds on a judge's discretion.  It keeps a

---

[15] "There is no express, statutory requirement that plans propose substantial payments on unsecured claims, nor any provision of Chapter 13 that defines substantial as being at least 70% of such claims.  I have concluded that it is necessary to read such a requirement into 11 U.S.C. s 1325(a) on the basis that failure to do so will frustrate the objectives of Congress and lead to absurd results considering Chapter 13 within the Bankruptcy Code as a whole."  Id. at 651.  (Footnote omitted.)

Case 09-10669-t13   Doc 23   Filed 06/29/09   Entered 06/29/09 13:30:41 Page 13 of 17

judge from imposing his or her personal feelings in the guise of applying the statute. Applying that standard in this case, no such conflict can be articulated because it does not exist.

The <u>Paley</u> court, in language repeated by the <u>Sanchez</u> court, <u>slip opinion</u> at 6, announced that the standard (which the debtor in that case failed) was

> whether the debtor came to bankruptcy court seeking a fresh start under Chapter 13 protection with an intent that is consistent with the spirit and purpose of that law - rehabilitation through debt repayment - or with an intent contrary to its purposes - debt avoidance through manipulation of the Code. <u>In re McGovern</u>, 297 B.R. 650, 660 (S.D.Fla. 2003).

390 B.R. at 58. The <u>Sanchez</u> court, <u>slip opinion</u> at 5, quoted <u>Paley</u> further:

> These cases, basically Chapter 7 cases hidden within Chapter 13 petitions, blur the distinction between the chapters into a meaningless haze. To allow them to go forward would, in effect, judicially invalidate § 727(a)(8)'s requirement of an eight year hiatus between Chapter 7 discharges and replace it with either the four year break required by § 1328(f)(1), or the two year gap mandated by § 1328(f)(2).

390 B.R. at 59-60. (Internal punctuation and footnotes omitted.)

The quoted statements are not so much explanations of perceived violations of bankruptcy policy that support the decisions as they are conclusory statements. The plans in those case constituted a "manipulation"[16] of the Code and would have

---

[16] "Manipulate" of course is a loaded term, used in <u>Paley</u> in a deprecatory sense. Compare these two definitions of the term: "2a: to manage or utilize skillfully" and "2b: to control or play upon by artful, unfair, or insidious means esp. to one's own

Page 14 of 17

"judicially invalidated" the discharge provisions of the Code because the courts making those decisions had already decided that the plans could not be confirmed. It is true that in <u>Paley</u>, the nine-month and the twelve-month plans, so limited because that was all that was needed to pay the debtors' attorney fees, <u>id.</u> at 59, ran up against the general requirements of a three-year commitment or full payment of unsecured claims as set on in § 1325(b)(4). That conflict would be a legitimate reason to deny confirmation, but the <u>Paley</u> court declined to make any such specific analysis. <u>Id.</u> at 60. The <u>Sanchez</u> court also articulated no specific conflict with a Code provision or policy.

In this case, as in <u>Sanchez</u>, the plan provides for payments for 36 months, which, given Counsel's waiver of additional fees, will likely be exactly enough to pay the attorney fees and no more. In <u>Sanchez</u>,

> while the Debtors seek protection under the Bankruptcy Code, they only propose to make minimal payment for a minimum plan term. ... [C]onfirmation would, in effect, grant the Debtors the benefits of the automatic stay and yet another discharge without a corresponding burden on the Debtor to repay at least a portion of their debts through payments under a Chapter 13 plan.

---

advantage". <u>Webster's Ninth New Collegiate Dictionary</u> (1991) 724. Clearly an attorney is charged with skillfully utilizing the Code to the client's advantage.

Case 09-10669-t13    Doc 23    Filed 06/29/09    Entered 06/29/09 13:30:41 Page 15 of 17

<u>Id.</u> at 5.[17]  The foregoing description also summarizes the facts of this case.  There is nothing therein that violates any provision or policy of the Code.  There is no reason not to confirm such a plan.

The Trustee additionally argues that chapter 13 is not intended as a welfare statute, and that if Debtor needs such assistance for herself and her grandchild, it is the State (or some other branch of the federal government) that should provide it.  In a very real sense, she is correct; direct financial aid does not come through the Code.  On the other hand, bankruptcy "gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt."  <u>Local Loan Co. v. Hunt</u>, 292 U.S. 234, 244 (1934).  This relief benefits, and is intended to benefit, a debtor in a very real financial manner.  So even though it is not ordinarily called "welfare", bankruptcy relief serves a similar purpose as financial aid.  It is not a stretch therefore to look on bankruptcy as a legitimate way of helping a debtor and her

_____

[17] It is in a debtor's best interest to pay as little as possible to the creditors.  Usually this is accomplished by a chapter 7 case; sometimes it happens in a chapter 13 case.  Since the direction for a debtor to repay his or her creditors more than required is merely precatory, the failure to pay more than required surely cannot be the basis for denying confirmation.

Case 09-10669-t13   Doc 23   Filed 06/29/09   Entered 06/29/09 13:30:41 Page 16 of 17

grandchild who are in economic straits.

**Conclusion**

Clearly Debtor needs bankruptcy relief for herself and her grandchild. In this case, a successful chapter 13 case will provide very real relief for Debtor and her dependent. She is complying with the letter, and the spirit, of the chapter 13 law as Congress has written it. Debtor has established the bases for confirming her plan, and there is no reason not to confirm it. An order will enter.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

**Date Entered on Docket:  June 29, 2009**

Copies to:

Gary B Ottinger
PO Box 1782
Albuquerque, NM 87103-1782

Debbie Ann Molina
129 N. Breece St.
Grants, NM 87020-3550

Kelley L. Skehen
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111